# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM SHAFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 1656 |
| | ) | |
| AMERICAN MEDICAL ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant American Medical Association's ("AMA") motion for summary judgment on Plaintiff William Shaffer's two-count complaint, which alleges violations of the Age Discrimination in Employment Act ("ADEA") and Family and Medical Leave Act ("FMLA"). For the following reasons, the Court grants Defendant's summary judgment motion.

## BACKGROUND

### I.      Northern District of Illinois Local Rule 56.1

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Specifically, Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The

opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, part of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) Response, but instead must rely on the nonmovant's Local Rule 56.1(b)(3)(C) Statement of Additional Facts when making factual determinations. *See id.* at 643; *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005) ("Local Rule 56.1 requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement … of any additional facts that require the denial of summary judgment.'") (emphasis in original).

Moreover, the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, *see Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006), and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses. Also, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon*, 233 F.3d at 528. Further, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon*, 401 F.3d at 809-10. Finally, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is

inadmissible in a trial." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). With these standards in mind, the Court turns to the relevant facts of the case.

## II.    Relevant Facts

### A.    The Parties

Defendant AMA is a not-for-profit-professional-membership organization whose mission is to promote medicine and public health. (R. 49, Def.'s Statement of Material Facts at ¶ 2.) Plaintiff Shaffer is a seventy-three-year-old former employee of Defendant. (R. 54, Pl.'s Statement of Additional Facts at ¶ 1.)

### B.    Shaffer's Employment at the AMA

Defendant hired Plaintiff Shaffer as a speech writer in 1999, when Shaffer was sixty-three years old. (R. 49, Def.'s Statement of Facts at ¶ 8; R. 54, Pl.'s Statement of Additional Facts at ¶ 4.) Plaintiff voluntarily resigned later in 1999, but Defendant hired Plaintiff to be a speech writer as a contract employee in 2001. (R. 49, Def.'s Statement of Facts at ¶ 9; R. 54, Pl.'s Statement of Additional Facts at ¶ 4.) Defendant hired Plaintiff as a full-time contract employee in 2004, when Plaintiff was sixty-eight years old. (R. 49, Def.'s Statement of Facts at ¶ 9; R. 54, Pl.'s Statement of Additional Facts at ¶ 4.) Michael Lynch, Vice President of AMA's twenty-employee External Communications Group, approved a $110,000 salary for Plaintiff in 2005, and later that year Lynch hired Plaintiff as AMA's Director of Leadership Communications, a full-time position within the External Communications Group. (R. 49, Def.'s Statement of Facts at ¶¶ 6, 10, 15; R. 54, Pl.'s Statement of Additional Facts at ¶ 5.)

As Director of Leadership Communications, Plaintiff handled the AMA's speech writing and media relations and supervised a staff of one administrative assistant and three speech

writers, all of whom had lower salaries than he had. (R. 49, Def.'s Statement of Facts at ¶¶ 6-7; R. 54, Pl.'s Statement of Additional Facts at ¶ 8.) Lynch believed that Plaintiff had greater qualifications and more experience than the other speech writers. (R. 54, Pl.'s Statement of Additional Facts at ¶ 34.) Plaintiff was also responsible for assigning speech-writing projects, approving final speeches, developing speaking venues, organizing training for speakers, developing a website, and, occasionally, delegating writing assignments for print media. (R. 49, Def.'s Statement of Facts at ¶ 7.)

### C.    Changes at the AMA

In May or June 2008, Marietta Parenti, AMA's Chief Marketing Officer who supervises a number of managers including Lynch, met with Lynch to discuss areas that she believed were under- or over-staffed. (R. 49, Def.'s Statement of Material Facts at ¶¶ 5, 11.) Parenti stated that Defendant did not need four speech writers and specifically identified Plaintiff Shaffer as an employee who was disengaged and had a flippant attitude when she first met him. (*Id.* at ¶ 11.) Lynch then met with Shaffer to explain Parenti's concern that the AMA had too many speech writers and to urge Shaffer to find a way to make the speech writers' work visible and valued. (*Id.* at ¶ 12; R. 54, Pl.'s Statement of Additional Facts at ¶ 31.)

In August 2008, AMA management prepared the first draft of the 2009 budget, which anticipated reduced revenue of approximately $10 million and expenses that were roughly $43 million above their targeted levels. (R. 49, Def.'s Statement of Facts at ¶ 13.) Defendant asked all of its departments to reduce their 2009 budgets to a level at least 3% lower than their 2008 levels. (*Id.*) In response, Lynch initially did not plan to eliminate any positions to reduce his budget, but he instead reduced his budget by eliminating an annual conference. (*Id.* at ¶ 14.)

4

After Defendant AMA's September 2008 board meeting, however, Parenti directed her staff to consider all available options to further reduce budgets, including by eliminating positions. (*Id.* at ¶ 15.)

On October 28, 2008, Parenti emailed Lynch to request his recommendation "re elimination of Bill Shaffer's position." (R. 55, Pl.'s Appx. Exs. 1, 2.) Lynch responded by indicating that if it were necessary to eliminate a position, he was leaning toward that of Communications Campaign Manager Peter Friedman because his responsibilities had drastically changed, and the AMA had eliminated one of the core campaigns for which he was responsible. (R. 49, Def.'s Statement of Facts at ¶ 16; R. 54, Pl.'s Statement of Additional Facts at ¶ 9.) Specifically, Lynch responded later that day, in part, that "I do not think cutting additional positions beyond [Peter Friedman's], is in my team's, our work or the AMA's best interest." (R. 55, Pl.'s Appx. Exs. 1, 2.) Soon thereafter, at Defendant's important November 6-8 interim meeting, Lynch had to fill-in for Plaintiff as the speech-writing manager. (R. 49, Def.'s Statement of Material Facts at ¶ 19.)

Plaintiff claims that at a dinner on November 8 or 9, 2008, Plaintiff commented that he was really "into" the 1970s rock group REO Speedwagon, and Lynch responded, "With you it would have been more like Al Jolson or Bing Crosby."[1] (R. 54, Pl.'s Statement of Additional Facts at ¶ 38.) On November 20, 2008, Plaintiff notified Defendant's representative and Lynch that he intended to take short-term disability leave for a knee surgery that was scheduled for

---

[1] The parties do not explain who Al Jolson is, but according to the popular website Wikipedia, he "was an American singer, comedian, and actor" whose "career lasted from 1911 until his death in 1950, during which time he was commonly dubbed 'the world's greatest entertainer.'" Al Jolson biography, *available at* http://en.wikipedia.org/wiki/Al_Jolson.

January 12, 2009. (*Id.* at ¶ 10.) Defendant's representative responded by sending Plaintiff relevant forms and information. (*Id.* at ¶ 11.)

By November 25, 2008, Lynch, the sole decision-maker regarding which position to terminate, had not decided to terminate Plaintiff. (*Id.* at ¶ 13.) Over the course of several conversations with Parenti and Human Resources Representative Harvey Daniels that began weeks before, however, Lynch decided that it would be better to terminate Plaintiff and keep Friedman, who was willing to be a utility player that could handle a variety of projects and fill in gaps that would inevitably rise. (R. 49, Def.'s Statement of Facts at ¶ 17.) At some point, Lynch spoke with Daniels regarding his decision to eliminate Plaintiff's position. Daniels testified that Lynch told him on November 25, 2008, that he was "leaning towards" eliminating Plaintiff's position. (R. 54, Pl.'s Statement of Additional Facts at ¶¶ 16, 21; R. 55, Daniels Dep. at 59.) Lynch had no recollection of meeting with Daniels on November 25, 2008, however, and there was nothing in Lynch's calendar reflecting a meeting with Daniels on that day. (R. 54, Pl.'s Statement of Additional Facts at ¶ 15.) Additionally, Lynch testified that he met with Daniels between December 1, 2008, and December 4, 2008, to inform him of his decision to eliminate Plaintiff's position. (*Id.* at ¶¶ 16, 21; R. 55, Daniels Dep. at 59.)

On February 3, 2009, Daniels transcribed handwritten notes that he said he had taken during his meeting with Lynch on November 25, 2008. (R. 54, Pl.'s Statement of Additional Facts at ¶¶ 17-18.) He dated the typed notes November 25, 2008, and destroyed the handwritten notes. (*Id.* at ¶ 17.) Daniels also testified that Lynch said on November 26, 2008, that he had "just found out" that Plaintiff was going to take medical leave and asked whether that would have any effect on the termination decision. (*Id.* at ¶ 23.) Daniels then informed Lynch that the

FMLA makes it illegal to eliminate an employee's position based on that employee's decision to request FMLA leave, of which Lynch had been unaware. (*Id.* at ¶¶ 24-25.)

Whenever he met with Daniels, Lynch expressed his belief that Plaintiff – in contrast to Friedman – would resist when given projects that were not in his area of responsibility and generally displayed negativity and cynicism while in the office. (R. 49, Def.'s Statement of Facts at ¶ 18.) Lynch also testified that the interim-meeting incident bolstered his belief that the speech-writing staff could report directly to him without interrupting the group's continuity. (*Id.* at ¶ 19.)

On November 30, 2008, the day before Parenti's deadline for making a final decision, Lynch sent an email to Parenti that detailed his "11th hour change of heart" that "perhaps we should eliminate Bill Shaffer's position and keep Pete's for now. . . ." (*Id.* at ¶ 12; R. 55, Pl.'s Appx. Ex. 6.) In the email, Lynch noted that Plaintiff's negative and cynical attitude and approach to the job were "more problematic than Pete's" and that, while Friedman had been willing to take assignments outside of his job description, Plaintiff was not. (R. 55, Pl.'s Appx. Ex. 6.) Lynch also noted that Plaintiff earned more than Friedman and stated that eliminating Plaintiff's position rather than Friedman's would "make for a healthier work environment." (R. 55, Pl.'s Appx. Ex. 6.) Lynch added the justification that "[t]he team is already preparing for Bill's short-term leave in January, so his departure should not have any immediate negative impact." (R. 55, Pl.'s Appx. Ex. 6.) Finally, Lynch wrote, "It's a given that Bill does not figure in our future plans." (*Id.*)

Lynch informed Parenti on December 1, 2008, that he had decided to terminate Plaintiff's position. (R. 54, Pl.'s Statement of Additional Facts at ¶ 16.) At that time, Lynch knew that one

of the speech writers was in law school and did not intend to remain at the AMA as a speech writer.  (*Id.* at ¶ 37.)

      **D.**      **Plaintiff's Termination**

Lynch and Daniels informed Plaintiff Shaffer of the decision on December 4, 2008, and Plaintiff's last day was January 4, 2009.  (R. 49, Def.'s Statement of Facts at ¶ 20.)  At the termination meeting, Lynch told Plaintiff that the termination had nothing to do with his performance and that he needed to remove one head count, which happened to be Plaintiff.  (R. 54, Pl.'s Statement of Additional Facts at ¶ 27.)  Plaintiff held one of five positions that Defendant eliminated in December 2008 and January 2009, and in May 2009 Defendant eliminated approximately one hundred additional employees, including Friedman.  (R. 49, Def.'s Statement of Facts at ¶ 21.)  In February 2009, Daniels told Lynch to write a memorandum, dated when he had made the decision, justifying his decision to terminate Shaffer.  (R. 54, Pl.'s Statement of Additional Facts at ¶ 19.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *see Knight v. Wiseman*, 590 F.3d 458 (7th Cir. 2009).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S.

372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has

the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "Thus, to survive

summary judgment, the nonmoving party must present evidence sufficient to establish a triable

issue of fact on all essential elements of its case." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d

698, 702 (7th Cir. 2009); *see Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th

Cir. 2005) (the nonmoving party must present "evidence on which the jury could reasonably find

for the nonmoving party.").

## ANALYSIS

### I.     Age Discrimination in Employment Act

The ADEA "prohibits employers from firing workers who are 40 or older on the basis of

their age." *Martino v. MCI Communications Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009).

Specifically, it "provides, in relevant part, that '[i]t shall be unlawful for an employer . . . to fail

or refuse to hire or to discharge any individual or otherwise discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, *because of*

such individual's age.'" *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2350 (2009) (quoting 29

U.S.C. § 623(a)(1), with emphasis provided in *Gross*). "A plaintiff suing under the ADEA may

show discrimination directly or indirectly, in the latter instance through the approach established

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."

*Martino*, 574 F.3d at 452. "In either case, the bottom-line question is whether the plaintiff has

proved intentional discrimination." *Id.*

Ultimately, an ADEA plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross*, 129 S.Ct. at 2351. "In other words, proof that the plaintiff's age was a motivating factor, but not a determinative factor, in the employer's decision, will not suffice to establish the employer's liability." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010). Additionally, courts can infer that an adverse action is not based on age discrimination where, as here, the defendant hired the plaintiff when he was over forty-years old. *See Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000); *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 399 (7th Cir. 1997).

### A.      Direct Method

Under the direct method, Plaintiff must produce direct or circumstantial evidence that Defendant eliminated his position because of his age. *See Mach v. Will Co. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009) (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005)). "Direct evidence typically requires an admission of discriminatory animus, but a plaintiff may also produce circumstantial evidence that establishes the employer's discriminatory motive through a longer chain of inferences." *Mach*, 580 F.3d at 499.

The record is devoid of facts from which a jury could infer that Defendant terminated Plaintiff because of his age. The only evidence Plaintiff points to in support of his ADEA claim are two purportedly age-related comments that Lynch made: (1) that Plaintiff would have liked

Al Jolson and Bing Crosby; and (2) in his November 30, 2008, email to Parenti, that "[i]t's a given that Bill does not figure in our future plans." (R. 52, Pl.'s Resp. Br. at 10 n.5.) "An isolated comment or 'stray remark' is typically insufficient to create an inference of discrimination, but it may suffice if it (1) was made by the decision-maker, (2) around the time of the decision, and (3) referred to the challenged employment action." *Mach*, 580 F.3d at 498. The first statement does not support an inference of age discrimination because there is no evidence that there was any reference to the employment action at the time Lynch made it.

Plaintiff argues that Lynch's second statement "can easily be interpreted by a reasonable jury to be focusing on the Plaintiff's advanced age." (R. 52, Pl.'s Resp. Br. at 10 n.5.) The parties do not cite this statement in their statements of facts, and the Court will therefore disregard it. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005). Even if the Court were to consider this statement, however, it would not preclude summary judgment. While Plaintiff believes that Defendant's comments are age-related, "a plaintiff's subjective interpretation of her employer's statements is not controlling." *Chiaramonte*, 129 F.3d at 401; *see also Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337-38 (7th Cir. 1991) ("The employee 'must do more than challenge the judgment of his superiors through his own self-interested assertions. . . . The employee's perception of himself . . . is not relevant. It is the perception of the decision maker which is relevant.'" (quoting *Weihaupt v. American Med. Ass'n*, 874 F.2d 419, 428 (7th Cir. 1989)). "'[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.'" *Chiaramonte*, 129 F.3d at 401 (quoting *Mills v. First Fed. Sav. & Loan Assoc.*, 83 F.3d 833, 841-

42 (7th Cir. 1996)). Even reviewing the statement in a light most favorable to Plaintiff, it does not reference age. Further, as Lynch explained during his deposition, and which Plaintiff does has not rebutted, the "future plans" comment related to Parenti's lack of confidence in Plaintiff and had nothing to do with his age. (R. 57-1, Def.'s Supplemental Appx. at 117-18.) Accordingly, Lynch's statements do not suggest that Defendant discriminated against Plaintiff because of his age.

### B. Indirect Method

"To establish a *prima facie* case of age discrimination under the indirect method, [a plaintiff] must prove that (1) he is a member of a protected class . . .; (2) his performance met the company's legitimate expectations; (3) despite his performance he was subject to an adverse employment action . . .; and (4) the company treated similarly situated employees under 40 more favorably." *Martino*, 574 F.3d at 453; *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 364 (7th Cir. 2009). If a plaintiff establishes a *prima facie* case, "the burden shifts to the [defendant] to set forth a legitimate, nondiscriminatory reason for its employment decisions." *Patterson*, 589 F.3d at 364-65; *Martino*, 574 F.3d at 453; *Coco v. Elmwood Care, Inc.*, 128 F.3d 1777, 1180 (7th Cir. 1997) ("*McDonnell Douglas* is for cases in which an employee is performing in a satisfactory manner but loses his job anyway and is replaced by someone belonging to a different group from his own; in such a case there is sufficient likelihood of discrimination to make it reasonable to require the defendant to produce evidence of a noninvidious reason for the 'discrimination.'"). "If the [defendant] makes that showing, the burden shifts back to [the plaintiff] to explain why the [defendant's] proffered justification is pretext for discrimination."

*Patterson*, 589 F.3d at 365; *Martino*, 574 F.3d at 453. "[T]he ultimate burden to prove intentional discrimination always remains with [the plaintiff]." *Martino*, 574 F.3d at 453.

### 1. Similarly-Situated Employees

Defendant initially argues that Plaintiff has failed to establish a *prima facie* case because he has not shown that Defendant more favorably treated similarly-situated employees under the age of forty. Specifically, Defendant argues that the other speech writers were not similarly situated because Plaintiff was their manager. "The similarly situated requirement is very important, for without it a plaintiff would only have to point to one younger employee who was treated better than he. Such a minimal showing would be meaningless." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir. 2000) (internal citation omitted). "In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case." *Id.* at 617. "Although the similarly situated concept is a flexible one, the comparators must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles or performance histories." *Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) (internal quotation and citation omitted). This analysis "normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617-18; *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Ultimately, "[e]mployees are similarly situated if they are directly comparable in all material respects." *Raymond*, 442 F.3d at 610.

Plaintiff argues that he was treated differently from the other speech writers in his group, but Plaintiff was the group supervisor. The Seventh Circuit has found that ordinarily, employees are not similar if one is a supervisor to the other. *See Patterson*, 589 F.3d at 366 (quoting *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)). Plaintiff's only response to this argument is that "Parenti primarily regarded Shaffer as one of the AMA's 'four speechwriters,'" "the speechwriters operated as a team," and "the majority of his responsibilities involved writing and editing speeches." (R. 52, Pl.'s Resp. Br. at 13 (quoting Pl.'s Statement of Additional Facts at ¶ 31).) But Plaintiff does not address his higher salary or his supervisory or other non-speech-writing duties, and his proffered reasons do not establish that the speech writers were similarly situated to Plaintiff. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (noting that a "supervisor's additional experience makes it next to impossible for a court to conclude that a subordinate is similarly situated to him"). Relatedly, Plaintiff has made no showing that the speech writers whom he supervised had a comparable set of flaws. *See Patterson*, 589 F.3d at 366 (7th Cir. 2009); *Burks*, 464 F.3d at 751 (quoting *Haywood v. Lucent Techs.*, 323 F.3d 524, 530 (7th Cir. 2003)). Because Plaintiff has not shown that Defendant treated him less favorably than similarly-situated employees, he has not made a *prima facie* case of age discrimination.

### 2. Pretext

Even if Plaintiff were able to show a *prima facie* case, he cannot show that the stated reasons for terminating him were a pretext for age discrimination. *Martino*, 574 F.3d at 453 (upholding summary judgment against a plaintiff who, "[i]n his supervisors' eyes, [] was not a team player, [] was not available, and [] didn't take a very active role in the process"). Plaintiff

14

"may demonstrate pretext directly by showing that 'a discriminatory reason more likely motivated' his termination, or indirectly by showing that [Defendant's] explanations are 'unworthy of credence.'" *Senske*, 588 F.3d at 507. "Where defendants have proffered more than one reason for the dismissal, plaintiff must address *all* the reasons suggested by the defendants." *Chiaramonte*, 129 F.3d at 398 (emphasis in original). As the Seventh Circuit has explained, the "only concern is the honesty of the employer's explanation." *O'Connor v. DePaul Univ.*, 123 F.3d 665, 671 (7th Cir. 1997) ("For purposes of the ADEA, we may not be concerned with whether the decision was right or wrong, fair or unfair, well-considered or precipitous. We must look only at whether the reason was discriminatory or, in the pretext analysis, whether it actually did underlie the plaintiff's termination."). "To show that [Defendant's] explanations are not credible, [Plaintiff] must point to evidence that they are not the real reasons it fired him, have no grounding in fact, or are insufficient to warrant the termination decision." *Senske*, 588 F.3d at 507; *see also O'Connor*, 123 F.3d at 670. Plaintiff must show that Defendant "is lying with respect to each of its proffered explanations, unless this is the rare case where one reason is so 'fishy and suspicious' as to cast doubt on them all." *Senske*, 588 F.3d at 507 (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403-04 (7th Cir. 2008)). "At the end of the day, the question is simply whether 'the same events would have transpired' if [Plaintiff] 'had been younger than 40 and everything else had been the same.'" *Id.* (quoting *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994)).

Plaintiff argues that Defendant's stated reasons for terminating him were pretextual by pointing to the two purportedly age-related statements regarding Al Jolson and Bing Crosby and Defendant's future plans. "Although remarks can occasionally help to establish pretext, pretext

is not demonstrated by isolated statements unrelated to the employment decision at issue."

*Ritter*, 231 F.3d at 1044 (internal citation omitted) (concluding that a supervisor's statement about the plaintiff "getting critical in [his] old age" did not show pretext). "[S]tray remarks must be considered in the context of all the evidence, and may not overcome summary judgment if they stand alone as evidence that might support an inference of pretext." *O'Connor*, 123 F.3d at 672. Here, there is no evidence that the termination decision was discussed when Lynch made the comment regarding Al Jolson and Bing Crosby. Additionally, Plaintiff has offered no evidence connecting Lynch's comment to the termination decision. Without more, Lynch's comment does not show that Defendant's stated reasons for terminating him were pretextual. *See id.* (upholding summary judgment despite evidence that the plaintiff's supervisors referred to others as a "worthless old fucker," an "old bastard," and a "miserable old fucker"). Furthermore, the future-plans comment would not save Plaintiff's case even if the Court were to consider it because, as discussed above, it did not relate to Plaintiff's age. As such, Defendant is entitled to summary judgment on Plaintiff's ADEA claim.

## II.     Family and Medical Leave Act

"The FMLA entitles an employee to twelve weeks of leave every twelve-month period if she is afflicted with 'a serious health condition' which renders her unable to perform her job." *Smith v. The Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (citing 29 U.S.C. § 2612(a)(1)(D)). "The FMLA also forbids employers from retaliating against employees who claim benefits under the act." *Id.*; *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 590 (7th Cir. 2008).

To show a violation of his FMLA rights, Plaintiff must show that (1) he was eligible for FMLA protection, (2) the Act covered Defendant, (3) Plaintiff was entitled to leave and provided

the appropriate notice, and (4) Defendant retaliated against him for exercising his FMLA rights. *Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 750 (7th Cir. 2009); *The Hope School*, 560 F.3d at 702. "An employee who alleges that her employer retaliated against her for exercising her rights under the FMLA can proceed under the direct or indirect methods of proof familiar from employment discrimination litigation." *The Hope School*, 560 F.3d at 702; *Daugherty*, 577 F.3d at 751. Plaintiff seeks to proceed under both the direct and indirect methods.

### A.     Direct Method

Plaintiff contends that there is a convincing mosaic of circumstantial evidence showing that Defendant retaliated against him for taking FMLA leave. (R. 52, Pl.'s Resp. Br. at ¶ 2.) An FMLA plaintiff proceeding under the direct method "can survive summary judgment by 'creating a triable issue of whether the adverse employment action of which she complains had a discriminatory motivation.'" *Lewis v. School Dist. # 70*, 523 F.3d 730, 741 (7th Cir. 2008) (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 721 (7th Cir. 2005)). To do so, the plaintiff "must produce direct or circumstantial evidence that 'the protected conduct was a substantial or motivating factor in the employer's decision.'"[2] *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (quoting *Lewis*, 523 F.3d at 741-42); *Daugherty*, 577 F.3d at 750 ("Under the direct method of proving retaliation, a plaintiff must present evidence of a

_____

[2] "'A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions.'" *Lewis*, 523 F.3d at 742 (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)). Additionally "'[c]ircumstantial' evidence is evidence that allows the factfinder to 'infer intentional discrimination by the decisionmaker,' while 'direct' evidence 'prove[s] the fact in question without reliance upon inference.'" *Simpson v. Office of the Chief Judge of the Circuit Court of Will Co.*, 559 F.3d 706, 717 (7th Cir. 2009) (quoting *Caskey*, 535 F.3d at 593).

statutorily protected activity, a materially adverse action taken by the employer, and a causal

connection between the two."); *Simpson*, 559 F.3d at 717.

> If the plaintiff's evidence is thereafter contradicted, "the case must be tried unless
> the defendant presents unrebutted evidence that he would have taken the adverse
> employment action against the plaintiff even if he had no retaliatory motive; in
> that event the defendant is entitled to summary judgment because he has shown
> that the plaintiff wasn't harmed by retaliation."

*Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008) (quoting *Burnett v. LFW Inc.*,

472 F.3d 471, 481 (7th Cir. 2006)); *Cole v. State of Ill.*, 562 F.3d 812, 815 (7th Cir. 2009).

"Direct evidence typically consists of an admission by the decisionmaker that he acted

with retaliatory intent." *Long*, 585 F.3d at 350. A plaintiff may also prevail under the direct

method, however, "by 'constructing a convincing mosaic of circumstantial evidence that allows

a jury to infer intentional discrimination by the decisionmaker.'"[3] *Cole*, 562 F.3d at 815

(quoting *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008)); *see also Cracco v.*

*Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2009) ("Under the direct method, 'proof of

discrimination is not limited to near-admissions by the employer that its decisions were based on

a proscribed criterion,' but rather, includes 'circumstantial evidence which suggests

---

[3] As the Seventh Circuit has explained:

> "A mosaic is a work of visual art composed of a large number of tiny tiles that fit
> smoothly with each other, a little like a crossword puzzle. A case of
> discrimination can likewise be made by assembling a number of pieces of
> evidence none meaningful in itself, consistent with the proposition of statistical
> theory that a number of observations each of which supports a proposition only
> weakly can, when taken as a whole, provide strong support if all point in the same
> direction: a number of weak proofs can add up to a strong proof."

*Cole*, 562 F.3d at 815 (quoting *Sylvester v. SOS Children's Vills. Ill.*, 453 F.3d 900, 903 n.2 (7th
Cir. 2006)).

discrimination albeit through a longer chain of inferences.'" (quoting *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006)).  "The 'convincing mosaic' standard is simply shorthand for the requirement that [a plaintiff] must present circumstantial evidence that, when considered together, would permit a jury to believe that the defendants retaliated against her for exercising her FMLA rights."  *Cole*, 562 F.3d at 815 n.2.  "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group."  *Long*, 585 F.3d at 350.

### 1. Timing of Plaintiff's Termination

Plaintiff argues that a "reasonable jury can readily conclude from both the timing **and** [Lynch's] unexplained 'change of heart,' that Shaffer's request for FMLA leave is what motivated Lynch's decision" to terminate him.  (R. 52, Pl.'s Resp. Br. at 5 (emphasis in original).)  "Suspicious timing is a type of circumstantial evidence under the direct method," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004), which alone "'rarely is sufficient to create a triable issue'" because "'mere temporal proximity is not enough to establish a genuine issue of material fact.'"  *Cole*, 562 F.3d at 816 (quoting *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008)), and upholding summary judgment in favor of a defendant who fired the plaintiff within two months of taking FMLA leave).  *See also Daugherty*, 577 F.3d at 751-52 (upholding summary judgment in favor of a defendant who terminated the plaintiff while he was on leave); *Buie*, 366 F.3d at 506 ("[A] 'temporal sequence analysis is not a magical formula which results in a finding of a discriminatory cause.'" (quoting *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1034 (7th Cir. 1999)).  Temporal proximity can create a material fact as to causation, however, if "the adverse action follow[s] on the heels of

the employer's discovery of the employee's disability." *Buie*, 366 F.3d at 506-07; *see also Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001) ("We can imagine circumstances in which the timing of this decision could lead a fact finder to infer that the employee would not have been fired absent her taking of leave (if, for example, a supervisor who had been aware of problems with an employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware).").

When viewed in a light most favorable to Plaintiff, Lynch's "change of heart," including its timing, would not enable a reasonable jury to return a verdict in Plaintiff's favor. Plaintiff has presented no evidence that Lynch's termination decision was based on anything other than FMLA-neutral factors. *See Cole*, 562 F.3d at 816. The undisputed evidence is that Lynch believed that Plaintiff had a bad attitude and was concerned about Plaintiff's absence at the interim meeting. Further, Plaintiff does not dispute that Lynch had been in the process of deciding which position to eliminate since before Plaintiff gave notice of his FMLA leave, and that Plaintiff had always been one of the top candidates for termination. *See Easley v. YMCA of Metropolitan Milwaukee, Inc.*, No. 08-4293, 2009 WL 1803290, at *5 (7th Cir. June 25, 2009) (noting that "none of [the plaintiff's] evidence undercuts the legitimacy of the restructuring plan, which the [defendant] had started planning a month before she announced she was taking medical leave"); *Buie*, 366 F.3d at 507 (suspicious timing did not create a genuine issue of material fact where the plaintiff "was on the brink of discharge" before the defendant knew about his health condition); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (noting in a Title VII retaliation case that negative reports preceding a plaintiff's protected activity undermined the reasonableness of any inference that the protected activity triggered subsequent

criticism). Plaintiff has offered nothing more than timing and, as discussed below, accusations that do not raise an inference that Defendant discriminated against Plaintiff because of his FMLA request. That is not enough under the direct method, and Defendant is entitled to summary judgment because Plaintiff has failed to present sufficient evidence creating a genuine issue of material fact for trial.

Plaintiff's reliance on *Casna v. City of Loves Park*, 574 F.3d 420 (7th Cir. 2009), does not change this conclusion. There the plaintiff was a first-year clerk at a police station, and when her supervisor questioned the impact of her hearing disability, she responded, "Aren't you being discriminatory?" *Id.* at 423. The supervisor then consulted with the police chief, who instructed the supervisor to prepare a written evaluation of the plaintiff, even though that was the first time that the supervisor had made an evaluation of a subordinate during the subordinate's first year on the job. *Id.* The next day, the police chief recommended that the plaintiff be terminated. *Id.* After noting that "[s]uspicious timing is rarely enough to create a triable issue," the Seventh Circuit found that "in an extreme case like this, where the adverse impact comes 'on the heels' of the protected activity, it is." *Id.* at 427. This case is unlike the "extreme case" of *Casna*. Whereas there was no indication in *Casna* that the plaintiff's job – or anyone else's, for that matter – was in jeopardy before the plaintiff's confrontation with her supervisor, the undisputed evidence here is that Defendant had been contemplating a reduction in force in the weeks leading up to Plaintiff's termination, and Lynch and Parenti had discussed the possibility of terminating Plaintiff during that time. Similarly, here Lynch did not make the termination decision until ten days after Plaintiff requested FMLA leave. Furthermore, unlike in *Casna*, Plaintiff is unable to point to any other factor aside from timing that would suggest a connection

between his protected activity and the termination decision.  The record, viewed in a light most favorable to Plaintiff, shows that Lynch did not base his termination decision on Plaintiff's intention of taking FMLA leave for knee surgery.

### 2.    Manufactured Evidence

Plaintiff further contends that Lynch and Daniels "attempted to manufacture evidence that, if not refuted, would have suggested that Lynch made the decision to terminate Shaffer *before* he was notified that Shaffer was seeking FMLA leave."  (R. 52, Pl.'s Resp. Br. at 5 (emphasis in original).)  Tampering with evidence is probative of pretext or improper motivation, *Lewis*, 523 F.3d at 743; *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1008-09 (7th Cir. 2009), but the evidence – when viewed in a light most favorable to Plaintiff – does not support his claim that Defendant back-dated evidence.  Plaintiff argues that Daniels back-dated notes of a meeting that Daniels said he had with Lynch on November 25, 2008, but Plaintiff has no answer to Daniels' testimony that he simply dated the transcribed notes with the same date as the underlying notes.  Further, Plaintiff is factually incorrect when he states that the notes suggested that Lynch made the termination decision *before* Plaintiff gave his FMLA notice, as the notes were dated five days *after* Plaintiff gave his notice.  There is simply no evidence in the record that Daniels sought to manufacture evidence or mislead anyone when he transcribed the notes.

The Court has already addressed Plaintiff's related argument regarding the memorandum that Daniels told Lynch to write in February 2009.  Specifically, the Court found that "there is no evidence that Defendant intended to use the memo as evidence in this case."  (R. 42, 10/15/09

Minute Oder at 5.)  Plaintiff has offered no evidence that Defendant did intend to use that memo as evidence, and there is accordingly no basis to change the Court's earlier conclusion.

### 3.    Shifting Explanations

Plaintiff also argues that Defendant has given "shifting explanations" for terminating Plaintiff.  Specifically, Plaintiff claims that Defendant has given four separate reasons for eliminating Defendant's position: (1) "Lynch determined that the best way to complete the same amount of work with fewer employees was for him to absorb Shaffer's supervisory responsibilities," (2) "Friedman had proven that he was willing to be a valuable utility player who was able to handle a variety of projects," (3) "[t]he speechwriters would have a healthier work environment without Shaffer's negativity and cynicism in the office," and (4) "Shaffer was absent during a 'crisis' at a major AMA meeting."  (R. 52, Pl.'s Resp. Br. at 8.)  Shifting, inconsistent explanations can lead to a finding of pretext, *see Margelewski v. Cosco Indus., Inc.*, No. 06 C 6349, 2008 WL 192326, at *5 (N.D. Ill. Jan. 18, 2008), but Defendant's explanations are not contradictory and therefore do not suggest pretext.  *See O'Connor*, 123 F.3d at 671.

Specifically, there is no evidence that Lynch's stated justifications are illegitimate or inconsistent.  In an effort to show that they were, however, Plaintiff points to Lynch's October 28, 2008, email to Parenti, in which Lynch defends against terminating employees beyond Friedman, whose position he initially believed should be eliminated.  (R. 55, Pl.'s Appx. Exs. 1, 2.)  Nothing in that email, however, is inconsistent with Lynch's later-stated reasons for terminating Plaintiff.  Further, the record shows that between the time that Lynch sent the email and the time that he made his final termination decision, Plaintiff's and Friedman's conduct had caused Lynch's opinion to change.  While Daniel Blaney-Koen testified that an event at the

interim meeting was a minor glitch (R. 54, Pl.'s Statement of Additional Facts at ¶ 39; Daniel

Blaney-Koen Dep. at 30), there is no dispute that Lynch was the decisionmaker and believed it

was more serious (R. 49, Def.'s Statement of Facts at ¶ 19).  In any event, Blaney-Koen's

testimony does not establish that Lynch's explanations for terminating Plaintiff are inconsistent.

Even if Plaintiff's absence during the interim meeting had only been a minor glitch, that fact

would not preclude summary judgment.[4]  *See Daugherty*, 577 F.3d at 752 ("We do not 'tell

employers how to discipline employees; rather, we ensure that the process is not

discriminatory.'" (quoting *Kohls*, 259 F.3d at 805)).  Additionally, while Plaintiff claims that the

only reason that Lynch provided to Plaintiff's staff regarding the termination was salary-related,

Blaney-Koen testified that he did not recall whether Lynch gave other reasons for the

termination.  (Daniel Blaney-Koen Dep. at 33.)  Finally, it is of no moment that Lynch provided

only partial reasoning for terminating Plaintiff's position when communicating with Parenti and

Daniels, because the FMLA does not impose such a requirement on employers.  *See O'Connor*,

123 F.3d at 671.  Ultimately, there is no evidence that Lynch's reasons for terminating Plaintiff

are inconsistent.

### B.     Indirect Method

Under the indirect method of proving retaliation, a plaintiff "must demonstrate: (1) he

engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3)

---

[4]  That Blaney-Koen anticipated that he would not remain in the speech-writing group does not make the decision to terminate Plaintiff retaliatory.  Defendant provided adequate, non-retaliatory bases for terminating Plaintiff, and it is not the Court's role to second-guess that decision.  *See Ritter*, 231 F.3d at 1044 (observing that courts should "not 'sit as a super personnel department to review an employer's business decision'" (quoting *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000))).

he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Cracco*, 559 F.3d at 634-35; *Simpson*, 559 F.3d at 718.  The defendant must then "produce a legitimate, noninvidious reason for its actions." *Cracco*, 559 F.3d at 635.  The "burden then shifts back to [the plaintiff] to show that [the defendant's] reasons 'are false and only a pretext for discrimination.'" *Id.* (quoting *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008)).  If a plaintiff does not identify a similarly-situated employee whom the defendant treated more favorably, he must proceed under the direct method.  *Burnett v. LFW Inc.*, 472 F.3d 471, 482 (7th Cir. 2006).

Plaintiff's FMLA claim is unsuccessful under the indirect method because, as explained above, there is no evidence in the record that similarly-situated employees who did not engage in statutorily-protected activity were treated more favorably.  Specifically, Plaintiff has not presented evidence that other, non-terminated employees had sufficiently similar roles or performance histories.  Additionally, even if there were such evidence, Plaintiff has not directed the Court to any evidence that creates a genuine issue regarding whether Defendant's reasons for terminating him were pretextual, even when viewed in a light most favorable to Plaintiff.  Under such circumstances, no reasonable juror could find that Defendant's reasons were pretextual. *Cracco*, 559 F.3d at 635.  Defendant is therefore entitled to summary judgment on the FMLA count.  *See Simpson*, 559 F.3d at 720; *Easley*, 2009 WL 1803290, at *5 (upholding summary judgment against a plaintiff whose position was eliminated as part of a restructuring plan).

## CONCLUSION

For the foregoing reasons, the Court grants Defendant AMA's motion for summary judgment.

Dated:  April 19, 2010                    ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge